Kimbell D. Gourley/ISB No. 3578
JONES ♦ WILLIAMS ♦FUHRMAN ♦GOURLEY, P.A.
The 9th & Idaho Center
225 N. 9th Street, Suite 820
P.O. Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Email: kgourley@idalaw.com

Attorneys for Idaho Central Credit Union

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| In the matter of: | ) | Case No.: 19-40908-JMM |
| REN MCKAY GUTHRIE and EMILY RAQUEL GUTHRIE, | ) ) ) | **Chapter 7** |
| Debtors. | ) ) | |

### MOTION TO TERMINATE STAY AND RULE 4001.2 NOTICE

COMES NOW Idaho Central Credit Union ("ICCU"), by and through its counsel of record,

Jones ♦ Williams ♦Fuhrman ♦ Gourley, P.A. and, pursuant to the Federal Rules of Bankruptcy and

Local Bankruptcy Rule 4001.2, respectfully moves the court to modify the 11 U.S.C. § 362 stay to

permit ICCU to foreclose its security interest in relation to the following (collectively the

"Collateral"):

1) 2016 Dodge Challenger, VIN # 2C3CDZDJ0GH149172, and all tires, wheels,
   additions, substitutions, attachments, replacements and accessions thereof, plus the
   proceeds of all the foregoing ("Dodge Challenger");

2) 2014 Ford Explorer, VIN # 1FM5K8GT7EGB80618, and all tires, wheels, additions,
   substitutions, attachments, replacements and accessions thereof, plus the proceeds of

all the foregoing ("Ford Explorer"); and

3)      2015 Ford F-150, VIN # 1FTFW1EF8FKD38609, and all tires, wheels, additions, substitutions, attachments, replacements and accessions thereof, plus the proceeds of all the foregoing ("Ford F-150");

4)      2016 KTM 300 SX-W Motorcycle, VIN # VBKXWM234GM378495, and all tires, wheels, additions, substitutions, attachments, replacements and accessions thereof, plus the proceeds of all the foregoing ("KTM Motorcycle").

In support of said motion, ICCU respectfully represents:

1.      On or about August 2, 2018, Debtors, Ren McKay Guthrie and Emily Guthrie, ("Debtors") made, executed, and delivered to ICCU a certain Loan and Security Agreements and Disclosure Statement, a true and correct copy of which is attached as **Exhibit A** and incorporated herein by this reference (hereinafter the "Loanliner"). The Loanliner was made, executed, and delivered for and in consideration of, and for the purchase of, and to grant a security interest in, the Dodge Challenger.

2.      On or about December 27, 2017, the Debtors made, executed, and delivered to ICCU a certain Loan and Security Agreements and Disclosure Statement, a true and correct copy of which is attached as **Exhibit B** and incorporated herein by this reference (hereinafter the "Loanliner #2"). The Loanliner #2 was made, executed, and delivered for and in consideration of, and for the purchase of, and to grant a security interest in, the Ford Explorer.

3.      On or about November 20, 2018 the Debtors made, executed, and delivered to ICCU a certain Idaho Retail Installment Contract, a true and correct copy of which is attached as **Exhibit C** and incorporated herein by this reference (hereinafter the "Contract"). The Contract was made, executed, and delivered for and in consideration of, and for the purchase of, and to grant a security

**MOTION TO TERMINATE STAY AND RULE 4001.2 NOTICE - 2**

interest in, the Ford F-150.

4.      On or about August 18, 2017, the Debtors made, executed, and delivered to ICCU a certain Loan and Security Agreements and Disclosure Statement, a true and correct copy of which is attached as **Exhibit D** and incorporated herein by this reference (hereinafter the "Loanliner #3"). The Loanliner #3 was made, executed, and delivered for and in consideration of, and for the purchase of, and to grant a security interest in, the KTM Motorcycle.

5.      In order to secure the obligations owed under the Loanliner, Loanliner #2, Contract, and Loanliner #3 the Debtors granted ICCU a security interest in the Collateral.

6.      ICCU perfected its security interest upon the Collateral by causing the certificates of title for the Collateral to identify ICCU as the first lien holder.  True and correct copies of the Certificates of Title are attached collectively hereto as **Exhibit E,** and, by this reference, incorporated herein as though set forth in full.

7.      The Loanliner, Loanliner #2, Contract, and Loanliner #3 further provide that on the Debtors' failure or refusal to make any payments under said Loanliner, Loanliner #2, Contract, and/or Loanliner #3, the whole amount payable would be due immediately at the option of ICCU, or its assignee, and that ICCU, or its assignee, would be entitled to the immediate possession of the Collateral.

8.      The Debtors have failed to timely make the payments owed under the Loanliner account for the period of June 2019 to the present date.

9.      The Debtors have failed to timely make the payments owed under the Loanliner #2 account for the period of June 2019 to the present date.

10.     The Debtors have failed to timely make the payments owed under the Contract account for the period of June 2019 to the present date.

**MOTION TO TERMINATE STAY AND RULE 4001.2 NOTICE - 3**

11.   The Debtors have failed to timely make the payments owed under the Loanliner #3 account for the period of July 2019 to the present date.

12.   The outstanding obligation owed under the Loanliner as of November 12, 2019, is the sum of $36,688.22. Interest continues to accrue at the per diem interest rate of $9.19.

13.   The outstanding obligation owed under the Loanliner #2 as of November 12, 2019, is the sum of $25,147.41.  Interest continues to accrue at the per diem interest rate of $2.76.

14.   The outstanding obligation owed under the Contract as of November 12, 2019, is the sum of $27,415.85. Interest continues to accrue at the per diem interest rate of $4.61.

15.   The outstanding obligation owed under the Loanliner #3 as of November 12, 2019, is the sum of $5,785.95. Interest continues to accrue at the per diem interest rate of $1.23.

16.   The fair market value for the Dodge Challenger is approximately $36,000.00 for a clean retail value and $32,950.00 for a clean trade-in value pursuant to NADA pricing and information.

17.   The fair market value for the Ford Explorer is approximately $19,275.00 for clean retail value and $16,200.00 for a clean trade-in value pursuant to NADA pricing and information.

18.   The fair market value for the Ford F-150 is approximately $24,200.00 for a clean retail value and $20,500.00 for a clean trade-in value pursuant to NADA pricing and information.

19.   The fair market value for the KTM Motorcycle is approximately $4,695.00 for a clean retail value and $3,570.00 for a clean trade-in value pursuant to NADA pricing and information.

20.   ICCU does not have, and has not been offered, adequate protection for its interest in the Collateral.

21.   The Debtors have no equity in the Collateral.  The Debtors stated in their Statement of Intention, that they intend to surrender the Dodge Challenger, Ford Explorer, and Ford F-150 to

ICCU. The Debtors did not include the KTM Motorcycle in their Statement of Intention.

22.     If ICCU is not permitted to foreclose its security interest in the Collateral, it will suffer irreparable injury, loss, and damage.

WHEREFORE, ICCU asks the court to enter its order terminating, annulling, or otherwise modifying the automatic stay in force in this case as to said Collateral in favor of ICCU, and authorizing it to take such action as it deems necessary to enforce its rights in said Collateral according to law. In the alternative, in the event the court does not modify the automatic stay as prayed for herein, ICCU requests the court condition the continued possession and use of the Collateral by Debtors, upon provision to ICCU of adequate protection of its interest herein, and specifying that said adequate protection include periodic cash payments, additional security, or such relief as seems adequate to the Court, and proof of insurance and proper maintenance.

This motion is made and based upon the records and files in this action. ICCU respectfully requests the court waive the fourteen (14) day stay provided for pursuant to F.R.B.P. 4001(a)(3).

## RULE 4001.2 NOTICE

NOTICE IS HEREBY GIVEN THAT ICCU has filed a motion with this Court for an Order granting it relief from the automatic stay.

Please take notice that pursuant to Local Bankruptcy Rule 4001.2 of the Local Bankruptcy Rules, and subject to FED. R. BANKR. P. 9006, any party in interest opposing the motion must file and serve an objection to the motion <u>not later than seventeen (17) days after the date of service of the motion</u>. The objection shall specifically identify those matters contained in the motion that are at issue and any other basis for opposition to the motion. **<u>Absent the filing of a timely objection, the court may grant the relief sought without a hearing.</u>** In addition, as required by Local Bankruptcy Rule 4001.2(d)(3), if an objection is filed to this motion, the objection must be served

**MOTION TO TERMINATE STAY AND RULE 4001.2 NOTICE - 5**

upon the movant and upon all parties receiving service of the motion.  In accordance with Local Bankruptcy Rule 4001.2(e)(1), any party opposing a motion for stay relief must contact the court's calendar clerk to schedule a preliminary hearing.  At the time of filing the objection to a motion, the objecting party shall file and serve a notice of such hearing.

In addition, pursuant to Local Bankruptcy Rule 4001.2 and 11 U.S.C. § 362(e), thirty (30) days after a request under 11 U.S.C. §362 (d) for relief from the stay of any act against property of the estate under 11 U.S.C. §362(a),  such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.

DATED this 13th day of November, 2019.

JONES ♦WILLIAMS ♦FUHRMAN ♦GOURLEY, P.A.

By ____/s/ Kimbell D. Gourley_____
       Kimbell D. Gourley
       Attorneys for Idaho Central Credit Union

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 13th day of November, 2019, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System which sent a Notice of Electronic Filing to the following persons:

| |
|---|
| Aaron J Tolson– ajt@aaronjtolsonlaw.com |
| U.S. Trustee – ustp.region18.bs.ecf@usdoj.gov |
| R Sam Hopkins- AWilliams32@cableone.net |
| Sheila Rae Schwager- sschwager@hawleytroxell.com |
| Brent Russel Wilson- bwilson@hawleytroxell.com |
| PRA Receivables Management, LLC- claims@recoverycorp.com |
| Gary L Rainsdon- trustee@filertel.com |
| Laura E Burri- lburri@morrowfischer.com |

Additionally, I certify that the following listed non-registered CM/ECF participants were served a copy of the foregoing by first class mail, postage prepaid, addressed to:

| |
|---|
| Ren McKay Guthrie<br>Emily Raquel Guthrie<br>3773 Autumnwood Drive<br>Idaho Falls, ID 83406 |

      /s/ Kimbell D. Gourley
Kimbell D. Gourley

**MOTION TO TERMINATE STAY AND RULE 4001.2 NOTICE - 7**

# EXHIBIT A



**Idaho Central**
CREDIT UNION
Your money. Your trusted choice.

4400 Central Way
Chubbuck, ID 83202-5096
(208) 478-3300
(800) 456-5067
Fax: (208) 239-3055
www.iccu.com

# Loan and Security Agreements and Disclosure Statement

☐ **Covered Borrower Under Military Lending Act**

| LOAN DATE | ACCOUNT NUMBER | LOAN NUMBER | MATURITY DATE |
|---|---|---|---|
| 08/02/2018 | ███1014 | ███1014 | 08/20/2025 |

| BORROWER 1 (Name & Address) | BORROWER 2 (Name & Address) |
|---|---|
| Ren McKay Guthrie | EMILY GUTHRIE |
| 5380 N 55th E | 3773 Autumnwood Dr. |
| Idaho Falls, ID 83401 | Ammon, ID 83406 |

| BORROWER 3 (Name & Address) | BORROWER 4 (Name & Address) |
|---|---|
| | |

## TRUTH IN LENDING DISCLOSURE ('e' means an estimate)

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit is $ 52,876.97<br>which includes Your downpayment of $ 0.00 |
|---|---|---|---|---|
| 9.140 % | $ 14,107.19 | $ 38,769.78 | $ 52,876.97 | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 83 | $ 629.50 | Monthly | Beginning 09/20/2018 |
| 1 | $ 628.47 | | 08/20/2025 |

Electing to skip any of your payments will extend your term.

**Prepayment:** If You pay off early You will not have to pay a penalty.
**Required Deposit:** The Annual Percentage Rate does not take into account Your required deposit, if any.
**Demand:** ☒ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone You want that is acceptable to the Credit Union. If You get the insurance from the Credit Union You will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ 14.00 | $ |

**Late Charge:**

If your monthly payment is 10 or more days late, you will be charged $15.00 or 5% of the overdue payment, whichever is greater.

**Security:** Collateral securing other loans with the Credit Union may also secure this Loan. You are giving a security interest in Your shares and dividends and, if any, Your deposits and interest in the Credit Union; and the Property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| DODGE | DODGE Challenger | 2016 | 2C3CDZDJ0GH149172 | Auto | $ 40,525.00 | |
| N/A | N/A | N/A | N/A | N/A | $ N/A | |
| N/A | N/A | N/A | N/A | N/A | $ N/A | |

Other (Describe) Tony Basso GM 435-637-0110
Pledge of Shares $            in Account No.            $            in Account No.

**See Your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.**

## ITEMIZATION OF THE AMOUNT FINANCED ('e' means an estimate)

| Itemization of Amount Financed of<br>$ 38,769.78 | Amount Given to You Directly<br>$ 0.00 | Amount Paid on Your Account<br>$ | Prepaid Finance Charge<br>$ 0.00 |
|---|---|---|---|

**Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) We will be retaining a portion of the amount.)**

| | | | |
|---|---|---|---|
| $ 14.00 | To ID Title Fee | $ 38,755.78 | To Tony Basso GM |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |



© CUNA Mutual Group 1999, 2000, 01, 02, 05, 06, 08, 2016, 18
All Rights Reserved

NZX021-E



## MILITARY LENDING ACT DISCLOSURES

Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

Please call Us at 1 (800) 456-5067 to receive oral disclosures of the Military Lending Act disclosure above and a description of the payment obligation.

A "Covered Borrower" for purposes of this loan means a consumer who, at the time the consumer becomes obligated on this loan, is a covered member or a dependent of a covered member as defined by the Military Lending Act. A Covered Borrower does not mean a consumer who (though a Covered Borrower at the time he or she became obligated on this transaction) no longer is a covered member or a dependent of a covered member as defined by the Military Lending Act.

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "You" or "Your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY -** You promise to pay $ 38,769.78     to the Credit Union plus interest on the unpaid balance until what You owe has been repaid. For **fixed rate** loans, the interest rate is     9.140 % per year.

**Collection Costs:**

You agree to pay all costs of collecting the amount You owe under this agreement, including court costs, and if the amount You borrowed was greater than $1,000, reasonable attorney fees.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If You prepay any part of what You owe, You are still required to make the regularly scheduled payments, unless We have agreed to a change in the payment schedule. Because this is a simple interest loan, if You do not make payments exactly as scheduled, Your final payment may be more or less than the amount of the final payment that is disclosed. If You elect voluntary payment protection, We will either include the premium or program fee(s) in Your payments or extend the term of Your loan. If the term is extended, You will be required to make additional payments of the scheduled amount, until what You owe has been paid. You promise to make all payments to the place We choose. If this loan refinances another loan You have with Us, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner We choose.

**3. LOAN PROCEEDS BY MAIL -** If the proceeds of this loan are mailed to You, interest on this loan begins on the date the loan proceeds are mailed to You.

**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans You have with Us also secures this loan, unless the property is a dwelling or otherwise prohibited by federal and/or state law. In addition to Your pledge of shares, We may also have what is known as a statutory lien on all individual and joint accounts You have with Us. A statutory lien means We have the right under federal and/or state law to claim an interest in Your accounts. Unless otherwise prohibited by federal and/or state law, We can enforce a statutory lien against Your shares and dividends and, if any, interest and deposits, in all individual and joint accounts You have with Us to satisfy any outstanding financial obligation that is due and payable to Us. We may exercise Our right to enforce this lien without further notice to You, to the extent permitted by law. **For all borrowers:** You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts You have with the Credit Union now and in the future. **The statutory lien and/or Your pledge will allow Us to apply the funds in Your account(s) to what You owe when You are in default.** If a dollar amount and account number are listed in the "Security" section of the Truth in Lending Disclosure, You may not withdraw the amount that has been specifically pledged to secure this loan until the Credit Union agrees to release all or part of the pledged amount. The statutory lien and Your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT -** You will be in default under this Agreement if You do not make a payment of the amount required on or before the date it is due. You will be in default if You break any promise You made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if You die, file for bankruptcy, become insolvent (that is, unable to pay Your bills and loans as they become due), or if You made any false or misleading statements in Your loan application. You will also be in default if something happens that We believe may seriously affect Your ability to repay what You owe under this Agreement or if You are in default under any other loan agreement You have with Us.

**6. ACTIONS AFTER DEFAULT -** When You are in default, We may demand immediate payment of the entire unpaid balance under this Agreement. If We demand immediate payment, You will continue to pay interest at the rate provided for in this Agreement, until what You owe has been repaid. **We will also apply against what You owe any shares and/or deposits**

NZX021-E

Credit Union  Idaho Central Credit Union                    Acct No.              1014    Loan No.              1014

given as security under this Agreement. We may also exercise any other rights given by law when You are in default. **Unless You are a Covered Borrower under the Military Lending Act, You waive any right You have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment.**

**7. EACH PERSON RESPONSIBLE -** Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means We can enforce Our rights against any one of You individually or against all of You together.

**8. LATE CHARGE -** If You are late in making a payment, You promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, You will not be charged one.

**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES -** Notices will be sent to You at the most recent address You have given Us in writing. Notice to any one of You will be notice to all.

**12. USE OF ACCOUNT -** You promise to use Your account for consumer (personal, family or household) purposes, unless the Credit Union gives You written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. The following is required by Vermont law: NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**15. NOTICE TO UTAH BORROWERS:** This written Agreement is the final expression of the Agreement between You and the Credit Union. This written Agreement may not be contradicted by evidence of any oral agreement.

**16. OTHER PROVISIONS -**

| SECURITY AGREEMENT |
|---|

In this Security Agreement ("Agreement") all references to "Credit Union", "We", "Our" or "Us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "You" or "Your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN -** You give Us what is known as a security interest in the Property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest You give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which You buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money You receive from selling the Property or from insurance You have on the Property. If the value of the Property declines, You promise to give Us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. **Unless prohibited by applicable law, the security interest also secures any other loans, including any credit card loan, You have now or receive in the future from Us and any other amounts You owe Us for any reason now or in the future, except any loan secured by Your principal dwelling.** If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or Your principal dwelling, the Property will secure only this Loan and not other loans or amounts You owe Us.

**3. OWNERSHIP OF THE PROPERTY -** You promise that You own the Property or, if this Loan is to buy the Property, You promise You will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that You have not already told Us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise You will allow no other security interest or lien to attach to the Property either by Your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST -** If Your state issues a title for the Property, You promise to have Our security interest shown on the title. We may have to file what is called a financing statement to protect Our security interest from the claims of others. You irrevocably authorize Us to execute (on Your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to Us. You

NZX021-E

| Credit Union | Idaho Central Credit Union | Acct No. | 1014 | Loan No. | 1014 |

promise to do whatever else We think is necessary to protect Our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, We incur in protecting Our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY -** Until the Loan has been paid off, You promise You will: (1) Use the Property carefully and keep it in good repair. (2) Obtain Our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform Us in writing before changing Your address. (4) Allow Us to inspect the Property. (5) Promptly notify Us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle the Property in another state without telling Us.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to Us. You may provide the property insurance through a policy You already have, or through a policy You get and pay for. You promise to make the insurance policy payable to Us and to deliver the policy or proof of coverage to Us if asked to do so.

If You cancel Your insurance and get a refund, We have a right to the refund. If the Property is lost or damaged, We can use the insurance settlement to repair the Property or apply it towards what You owe. You authorize Us to endorse any draft or check which may be payable to You in order for Us to collect any refund or benefits due under Your insurance policy.

If You do not pay the taxes or fees on the Property when due or keep it insured, We may pay these obligations, but We are not required to do so. Any money We spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and You will pay interest on those amounts at the same rate You agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor Our loans for the purpose of determining whether You and other borrowers have complied with the insurance requirements of Our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to Us and (2) the cost of determining compliance with the insurance requirements. If We add amounts for taxes, fees or insurance to the unpaid balance of the Loan, We may increase Your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If You do not purchase the required property insurance, the insurance We may purchase and charge You for will cover only Our interest in the Property. The premium for this insurance may be higher because the insurance company may have given Us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws**.

**8. DEFAULT -** You will be in default if You break any promise You make or fail to perform any obligation You have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any Property You have given Us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the Property or Our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When You are in default, We may demand immediate payment of the outstanding balance of the Loan without giving You advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If We ask, You promise to deliver the Property at a time and place We choose. If the Property is a motor vehicle or boat, You agree that We may obtain a key or other device necessary to unlock and operate it, when You are in default. We will not be responsible for any other property not covered by this Agreement that You leave inside the Property or that is attached to the Property. We will try to return that property to You or make it available for You to claim.

After We have possession of the Property, We can sell it and apply the money to any amounts You owe Us. We will give You notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If You have agreed to pay the Loan, You must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what You owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of Our rights under this Agreement any number of times without losing the ability to exercise Our rights later. We can enforce this Agreement against Your heirs or legal representatives. If We change the terms of the Loan, You agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE FOR ARIZONA OWNERS OF PROPERTY -** It is unlawful for You to fail to return a motor vehicle that is subject to a security interest, within thirty days after You have received notice of default. The notice will be mailed to the address You gave Us. It is Your responsibility to notify Us if Your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

NZX021-E

DocuSign Envelope ID: 67B6B534-BEF3-4405-9C8C-1D32B901746F

| Credit Union | Idaho Central Credit Union | Case 19-40908-JMM | Doc 22 | Filed 11/13/19 | Acct No. | Entered 11/13/19 14:35:17 | Desc Main | Loan No. | 014 |
| Document | Page 13 of 30 |

**13. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

☐ *The following notice applies ONLY when the box at left is marked.*

**14. OTHER PROVISIONS -**

---

## SIGNATURES

By signing, or otherwise authenticating, as Borrower, You agree to the terms of the Loan Agreement. If Property is described in the "Security" section of the Truth in Lending Disclosure, You also agree to the terms of the Security Agreement. If You sign, or otherwise authenticate, as "Owner of Property" You agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT**

| Borrower 1 Signature | Date |
|---|---|
| X _DocuSigned by:_ [signature] 07CA40D1B6A8448... | 8/2/2018 (Seal) |

Ren McKay Guthrie

| Borrower 2 Signature | Date |
|---|---|
| X _DocuSigned by:_ [signature] 5493F5D8BFDF476... | 8/2/2018 (Seal) |

EMILY GUTHRIE

| Signature | Date |
|---|---|
| X | (Seal) |

| Signature | Date |
|---|---|
| X _DocuSigned by:_ Dan Wyler 24BE2350227B4F2... | 8/2/2018 (Seal) |

☐ Borrower 3:
☐ Owner of Property ☐ Witness

☐ Borrower 4:
☐ Owner of Property ☒ Witness

NZX021-E

# EXHIBIT B

**Idaho Central CREDIT UNION** | Your money. Your trusted choice.®

P.O. Box 2469 Pocatello, ID 83206 • 1-800-456-5067 • ICCU.com

**LOANLINER**

## Loan and Security Agreements and Disclosure Statement

| LOAN DATE | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER | MATURITY DATE |
|---|---|---|---|---|
| 12/27/2017 | 7063 | 7063 | 111-0024-5 | 01/10/2024 |

| BORROWER 1 | BORROWER 2 |
|---|---|
| NAME AND ADDRESS | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
| Ren McKay Guthrie<br>5380 North 55th East<br>Idaho Falls, ID 83401 | EMILY GUTHRIE<br>5380 North 55th East<br>Idaho Falls, ID 83401 |

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $ 36,749.30 |
| 4.000 % | $ 3,883.89 | $ 29,160.94 | $ 36,749.30 | which includes your downpayment of $ 0.00 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | | When Payments Are Due |
|---|---|---|---|
| 71 | $ 510.41 | Monthly | Beginning 02/10/2018 |
| 1 | $ 510.19 | | 01/10/2024 |

Electing to skip any of your payments will extend your term.

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Demand:** ☒ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union. If you get the insurance from us, you will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ 0.00 | $ |

**Late Charge:** If your monthly payment is 10 or more days late, you will be charged $15.00 or 5% of the overdue payment, whichever is greater.

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| FORD TRUCK | FORD TRUCK Explorer-V6 | 2014 | 1FM5K8GT7EGB80618 | Auto | $ 30,750.00 | |
| N/A | N/A | N/A | N/A | N/A | $ N/A | |
| N/A | N/A | N/A | N/A | N/A | $ N/A | |

Other (Describe) Elite Auto Sales
Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign, or otherwise authenticate, as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

| Borrower 1 Signature | Date |
|---|---|
| X _(signature)_ | 12/27/2017 (Seal) |
| Ren McKay Guthrie | |

| Borrower 2 Signature | Date |
|---|---|
| X _(signature)_ | 12/27/2017 (Seal) |
| EMILY GUTHRIE | |

| Signature | Date |
|---|---|
| X | (Seal) |

☐ Other Borrower ☐ Owner of Property ☐ Witness

| Signature | Date |
|---|---|
| X Antonio Magana | 12/27/2017 (Seal) |

☐ Other Borrower ☐ Owner of Property ☒ Witness

© CUNA Mutual Group 1999, 2000, 01, 02, 05, 06, 08 All Rights Reserved

NXX029-e

DocuSign Envelope ID: 0DC8CD28-A39A-4CC6-9FC1-BBA76D985A0F
Credit Union  Rano Central Credit Union      Loan No. XX XXX77053      Acct. No. XXXX7053

Doc 22   Filed 11/13/19   Entered 11/13/19 14:35:17   Desc Main
Document   Page 16 of 30

Borrower(s)  Ren McKay Guthrie                              EMILY  GUTHRIE

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of | Amount Given to You Directly | Amount Paid on Your Account | Prepaid Finance Charge |
|---|---|---|---|
| $ 29,160.94 | $ 0.00 | $ | $ |

**Amounts Paid to Others on Your Behalf:  (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)**

| | | | | |
|---|---|---|---|---|
| $ 28,661.94 | To  Elite Auto Sales | * $ 499.00 | To  ICCU GAP | |
| $ N/A | To | $ N/A | To | |
| $ N/A | To | $ N/A | To | |
| $ N/A | To | $ N/A | To | |
| $ N/A | To | $ N/A | To | |
| $ N/A | To | $ N/A | To | |
| $ N/A | To | $ N/A | To | |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY -** You promise to pay $ 29,160.94   to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is  4.000 % per year.

**Collection Costs:**

You agree to pay all costs of collecting the amount you owe under this agreement including court costs and reasonable attorney fees.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fee in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL -** If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT -** You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT -** When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

**7. EACH PERSON RESPONSIBLE -** Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE -** If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES -** Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT -** You promise to use your account for consumer (personal, family or household) purposes, unless the Credit Union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. OTHER PROVISIONS -**

NXX029-e

DocuSign Envelope ID: 0DC8CD28-A39A-4CC6-9EC1-BBA76D985A0F

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN -** You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. **The security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal dwelling.** If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY -** You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST -** If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY -** Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's

payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. DEFAULT -** You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it. You will also be in default under this Agreement if the Loan is in default.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE -** THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY -** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**15. OTHER PROVISIONS -**

# EXHIBIT C

# IDAHO RETAIL INSTALLMENT CONTRACT

Dealer Number **4590**          Contract Number _____

| Buyer (and Co-Buyer) - Name and Address (include County and Zip Code) | Creditor/Seller - Name and Address: |
|---|---|
| **REN MCKAY GUTHRIE OR EMILY RAOUEL GUTHRIE**<br>**3773 AUTUMNWOOD DRIVE AMMON ID 83406**<br>**BONNEVILLE** | **ELITE AUTO SALES**<br>**1430 N HOLMES AVE**<br>**IDAHO FALLS ID, 83401** |

**Agreement:** By signing this contract, you, the buyer (and Co-Buyer, if any), agree to buy the Vehicle described below for cash or on credit (hereinafter referred to as "Vehicle"). By signing this contract, you agree to the terms stated on the **front and back** of this contract, including without limitation, those stated in the Fede Truth-in-Lending Disclosures. You agree to pay Seller the Amount Financed and Finance Charges as set forth below. The Seller will compute your Finance Charge ea day on the unpaid balance of the Amount Financed according to the Annual Percentage Rate. **Definitions:** In this contract, the words "you", "your", and "yours" refer the Buyer and Co-Buyer, if any, listed above. The word "Seller", "Seller's", "us" and "we" refer to the Creditor/Seller named above. **Refer to the back of this contract other additional important information.**

## DESCRIPTION OF VEHICLE

| New/Used: | Year: | Make and Model: | Vehicle Identification Number: |
|---|---|---|---|
| **USED** | **2015** | **Ford F-150** | **1FTFW1EF8FKD38609** |

Primary Use: Personal unless otherwise indicated below.
☐ Commercial, Business or Agricultural

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit including your downpayment of $ **N/A** |
|---|---|---|---|---|
| **6.140** % | $ **5647.50** | $ **28103.94** | $ **33751.44** | $ **33751.44** |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 1 | **N/A** | Due On |
| 71 | **468.77** | Monthly Beginning **01/04/19** |
| 1 | **468.77** | Due On **12/4/24** |

**Security.** You are giving a security interest in the Vehicle being purchased.

**Late Charge.** For each payment that is not paid within 10 days after its scheduled payment date, you will pay a late charge of $15.00 or 5% of the amount that is late, whichever is greater.

**Prepayment.** If you pay off early, you will not have to pay a penalty.

Other contract provisions regarding nonpayment, default, any required repayment in full before the scheduled date, and security interest are provided on the front and back of this contract.

## INSURANCE AND PROTECTION

**WARNING: ANY INSURANCE INDICATED BELOW DOES NOT INCLUDE INSURANCE FOR: PUBLIC LIABILITY, BODILY INJURY OR DAMAGE TO PROPERTY (BEYOND DAMAGE TO THIS VEHICLE). WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**
If any insurance or protection is checked below, the policies or certificates issued by the companies named will describe the terms and conditions.

**Required Physical Damage Insurance:** You are required to obtain and maintain physical damage insurance throughout the term of this contract and any related financing. You may obtain insurance in form and content reasonably acceptable to Seller. If an amount for physical damage insurance is filled in below, you are requesting that we obtain the physical damage insurance for you. If purchased through this contract the cost of this insurance for the term is shown in 4A of the Itemization of Amount Financed.

Insurance Company: _____

Term: **N/A** months  $ **N/A** Deductible Collision and either:
☐ Full Comprehensive (including fire, theft and combined additional coverage)
☐ $ **N/A** Deductible Comprehensive (including fire, theft and combined additional coverage)
☐ Fire, Theft and Combined Additional Coverage
☐ Towing and Labor Costs (optional)
☐ Rental Reimbursement (optional)

**Optional Credit Insurance:** Credit life insurance, credit disability insurance and

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ **1466.94** in sales tax)  $ **25666.94** (1)
2. Down Payment:
A. Trade-In (year/make/model): _____
   Gross Trade-In Allowance: $ **N/A**
   Less Lien Payoff: $ **N/A**
   Equals Net Trade-In: (cannot be less than $0. If less than $0, list amount to be paid to lien holder in line 4J below.)  $ **N/A**
B. Cash:  $ **N/A**
C. Other: _____  $ **N/A**
Total Down Payment (A) plus (B) plus (C):  $ **N/A** (2)
3. Unpaid Balance of Cash Price (1) minus (2):  $ **25666.94** (3)
4. Charges Other Than Finance Charges Including Amounts Paid To Others on Buyers Behalf (Seller may be retaining a portion of this Amount):
A. Required Physical Damage Insurance  $ **0.00**
B. Credit Insurance:
   Life  $ **N/A**
   Disability  $ **N/A**
   Other  $ **N/A**

**Required Physical Damage Insurance:** You are required to obtain and maintain physical damage insurance throughout the term of this contract and any related financing. You may obtain this insurance in form and content reasonably acceptable to Seller. If an amount for physical damage insurance is filled in below, we are requesting that we obtain the physical damage insurance for you. If purchased through this contract the cost of this insurance for the term is shown in 4A of the Itemization of Amount Financed.

Insurance Company: _____

Term: __N/A__ months $ _____N/A_____ Deductible Collision and either:

❑ Full Comprehensive (including fire, theft and combined additional coverage)

❑ $ ____N/A____ Deductible Comprehensive (including fire, theft and combined additional coverage)

❑ Fire, Theft and Combined Additional Coverage

❑ Towing and Labor Costs (optional)

❑ Rental Reimbursement (optional)

**Optional Credit Insurance:** Credit life insurance, credit disability insurance and other optional insurance are not required to obtain credit. Your decision to buy or not buy this insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the additional cost. If you have chosen this insurance, the cost is shown in 4B of the Itemization on the right. Credit life insurance is based upon the payment schedule and the term of this contract. Disability insurance covers the original payment amount for the term of this contract. These insurance policies may not pay all you owe on this contract, especially if you make late payments. The amount, coverages, and other terms and conditions of the insurance are enumerated in the policies or certificates issued by the insurer.

❑ Credit Life (❑ Buyer ❑ Co-Buyer ❑ Both)
Insurer: _____ Insured(s): _____

❑ Credit Disability, Accident and Health (Buyer only)
Insurer: _____ Insured: _____

❑ Other: _____ Term: _____
Insurer: _____ Insured(s): _____

**APPROVAL: IF YOU WANT THE INSURANCE COVERAGE(S) CHECKED ABOVE SIGN BELOW. ADDITIONAL INSURANCE COVERAGE IS NOT REQUIRED TO OBTAIN CREDIT.**

Buyer Signature: X _____ Date 11/20/2018

Co-Buyer Signature: X _____ Date 11/20/2018

❑ **Optional Service Contract.** The cost of this contract is shown in 4C of the Itemization on the right.

Company: **ALPHA WARRANTY SERVICES**

Term: ___72___ Deductible: $ __2174.00__

❑ **Optional G.A.P. Contract:** A G.A.P. contract is not required to obtain credit and will not be provided unless you sign for it and agree to pay the additional cost. If you have chosen to buy a G.A.P. contract, the cost is shown in 4I of the itemization on the right and its terms and conditions shall be incorporated into this contract by this reference. See your G.A.P. contract for terms and conditions.

G.A.P. Provider: _____ Term: __N/A__ months

**APPROVAL: IF YOU WANT THE OPTIONAL COVERAGE(S) CHECKED ABOVE SIGN BELOW. ADDITIONAL COVERAGE IS NOT REQUIRED TO OBTAIN CREDIT.**

Buyer Signature: X _____ Date: 11/20/2018

Co-Buyer Signature: X _____ Date: 11/20/2018

---

Less Lien Payoff: $ _____N/A_____

Equals Net Trade-In: (cannot be less than $0. If less than $0, list amount to be paid to lien holder in line 4J below.) $ _____N/A_____

B. Cash: $ _____N/A_____

C. Other: $ _____N/A_____

Total Down Payment (A) plus (B) plus (C): $ _____N/A_____ (2)

3. Unpaid Balance of Cash Price (1) minus (2): $ __25666.94__ (3)

4. Charges Other Than Finance Charges Including Amounts Paid To Others on Buyers Behalf (Seller may be retaining a portion of this Amount):

A. Required Physical Damage Insurance $ __0.00__

B. Credit Insurance:

Life $ _____N/A_____

Disability $ _____N/A_____

Other $ _____N/A_____

C. Optional Service Contract* $ __2174.00__

D. Other Insurance $ _____N/A_____

E. Official Fees Paid to Government Agencies $ _____N/A_____

F. Government Taxes Not Included in Cash Price $ _____N/A_____

G. Government License and/or Registration Fees $ _____N/A_____

H. Government Certificate of Title Fees $ __14.00__

I. Optional G.A.P Contract $ _____N/A_____

J. Other Charges:

To __Elite Auto Sales__ For __Doc Prep__ $ __249.00__

To _____ For _____ $ _____

To _____ For _____ $ _____

Total Charges Other Than Finance Charges: $ __2437.00__ (4)

5. Amount Financed (3 plus 4) $ __28103.94__ (5)

* An optional service contract is not required to obtain credit and will not be provided unless you sign for it and agree to pay the additional cost. If you have chosen to purchase an optional service contract, the cost is shown in 4C of this Itemization.

---

**Returned Check Charge:** Pursuant to Idaho Code 28-22-105 you agree to pay a charge of $20 if any check you give Seller is dishonored.

**No Cooling Off Period.** You cannot cancel this contract after it is signed simply because you change your mind. After you sign the contract, you may only cancel if the Seller is unable to assign the contract. This notice does not apply to home solicitation sales.

**NOTICE TO BUYER:** Do not sign this contract before you read it or if it contains any blank spaces. This contract represents the entire agreement between you and us relating to this purchase. **ORAL CHANGES AND/OR STATEMENTS ARE VOID AND ARE NOT BINDING.** Buyer/Co-Buyer Initials X___ X___. Any change to this contract must be in writing and we must sign it. You are entitled to a copy of the contract. You have a right to pay the full amount owed in advance and if you do you may save a portion of the Finance Charge.

---

J AND THE DEALER HAVE AGREED THAT THE MOTOR VEHICLE WILL BE DELIVERED TO YOU PRIOR TO THE PURCHASE. IF FINANCING CANNOT ARRANGED ON THE TERMS AND WITHIN THE TIME PERIOD AGREED UPON IN THE MOTOR VEHICLE PURCHASE CONTRACT, THE CONTRACT IS .L AND VOID.

Annual Percentage Rate may be negotiable with Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

WARRANTY DISCLAIMER***: Unless Seller is providing a written warranty or enters into a service contract within 90 days from the e of this contract, Seller disclaims any and all warranties of the Vehicle either express or implied, including any implied warranties of chantability or fitness for a particular purpose. Additional important warranty provisions and disclaimers are found on the back of contract in Section 19.

This notice does not apply to home solicitation sales.

☐ **Optional G.A.P. Contract:** A G.A.P. contract is not required to obtain credit and will not be provided unless you sign for it and agree to pay the additional cost. If you have chosen to buy a G.A.P. contract, the cost is shown in 4I of the itemization on the right and its terms and conditions shall be incorporated into this contract by this reference. See your G.A.P. contract for terms and conditions.

G.A.P. Provider: _____  Term: __N/A__ Months

**APPROVAL: IF YOU WANT THE OPTIONAL COVERAGE(S) CHECKED ABOVE SIGN BELOW. ADDITIONAL COVERAGE IS NOT REQUIRED TO OBTAIN CREDIT.**

Buyer Signature: X _____  Date: __11/20/2018__

Co-Buyer Signature: X _____  Date: __11/20/2018__

**NOTICE TO BUYER:** Do not sign this contract before you read it or if it contains any blank spaces. This contract contains the entire agreement between you and us relating to this purchase. **ORAL CHANGES AND/OR STATEMENTS ARE VOID AND ARE NOT BINDING.** Buyer/Co-Buyer Initials X___ X___. Any change to this contract must be in writing and we must sign it. You are entitled to a copy of the contract. You have a right to pay the full amount owed in advance and if you do you may save a portion of the Finance Charge.

YOU AND THE DEALER HAVE AGREED THAT THE MOTOR VEHICLE WILL BE DELIVERED TO YOU PRIOR TO THE PURCHASE. IF FINANCING CANNO BE ARRANGED ON THE TERMS AND WITHIN THE TIME PERIOD AGREED UPON IN THE MOTOR VEHICLE PURCHASE CONTRACT, THE CONTRACT I NULL AND VOID.

The Annual Percentage Rate may be negotiable with Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge

**\*\*\*WARRANTY DISCLAIMER\*\*\*:** Unless Seller is providing a written warranty or enters into a service contract within 90 days from th date of this contract, Seller disclaims any and all warranties of the Vehicle either express or implied, including any implied warranties merchantability or fitness for a particular purpose. Additional important warranty provisions and disclaimers are found on the back this contract in Section 19.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take and review it. You confirm that you have received a completely filled-in copy when you signed it.

Buyer Signature: X _____  Date: __11/20/2018__  Co-Buyer Signature: X _____  Date __11/20/2018__

Other Owner Signature: _____  Date: __11/20/2018__

Co-Buyers and Other Owners Defined: A "co-buyer" is a person who is responsible for paying the entire debt. An "other owner" is a person whose name is on the ti of the vehicle but does not have to pay the debt. The "other owner" signs above in order to acknowledge the terms of this contract and to grant a security interest in t vehicle given to Seller pursuant to this contract.

Seller signs: _____  Date: __11/20/2018__  By: _____  Title: __F&I__

---

## ASSIGNMENT CLAUSE

Seller hereby assigns this contract to __IDAHO CENTRAL CREDIT UNION__ (Assignee) under the terms of Seller's agreement with Assignee.

☐ Assigned with recourse
☐ Assigned without recourse

Seller signs: _____  Date: __11/20/2018__  By: _____  Title: __F&I__

IADA V-001 (12/2009) Simple Interest – Idaho
© Copyright Idaho Automobile Dealers Association, Inc. (2009) All Rights Reserved. To reorder call your local Idaho Automobile Dealers Association.
Attention Seller: The IADA and the printer make no warranty, express or implied, as to the content or fitness for purpose of this form.
Consult your own legal counsel.

# EXHIBIT D

**Idaho Central CREDIT UNION** | Your money. **Your trusted choice.**

P.O. Box 2469 Pocatello, ID 83206 • 1-800-456-5067 • ICCU.com

**LOANLINER**

# Loan and Security Agreements and Disclosure Statement

| LOAN DATE | LOAN NUMBER | ACCOUNT NUMBER | GROUP POLICY NUMBER | MATURITY DATE |
|---|---|---|---|---|
| 08/18/2017 | 3858 | 3858 | 111-0024-5 | 09/03/2022 |

| BORROWER 1 | BORROWER 2 |
|---|---|
| **NAME AND ADDRESS** | **NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)** |
| Ren McKay Guthrie | EMILY GUTHRIE |
| 5380 North 55th East | 5380 North 55th East |
| Idaho Falls, ID 83401 | Idaho Falls, ID 83401 |

## TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit is $ 10,161.62 which includes your downpayment of $ 0.00 . |
| 7.790 % | $ 1,691.84 | $ 7,640.44 | $ 10,161.62 | |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | $ 169.37 | Monthly | Beginning | 10/03/2017 |
| 1 | $ 168.79 | | | 09/03/2022 |

Electing to skip any of your payments will extend your term.

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Demand:** ☒ This obligation has a demand feature.
☐ All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union. If you get the insurance from us, you will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ | $ |

**Late Charge:**
If your monthly payment is 10 or more days late, you will be charged $15.00 or 5% of the overdue payment, whichever is greater.

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| KTM | KTM 300 XC-W | 2016 | VBKXWM234GM378495 | RV | $ 6,599.00 | |
| N/A | N/A | N/A | N/A | N/A | $ N/A | |
| N/A | N/A | N/A | N/A | N/A | $ N/A | |

Other (Describe) Action Motor Sports
Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

## SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign, or otherwise authenticate, as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

| Borrower 1 Signature | Date |
|---|---|
| X _(DocuSigned by)_ | 8/18/2017 (Seal) |
| FFE61DEE3B469459... | |
| Ren McKay Guthrie | |

| Borrower 2 Signature | Date |
|---|---|
| X _(DocuSigned by)_ | 8/18/2017 (Seal) |
| 5493E9D8BEDF476... | |
| EMILY GUTHRIE | |

| Signature | Date |
|---|---|
| X | (Seal) |

| Signature | Date |
|---|---|
| X _(DocuSigned by) Bobby Brown_ | 8/18/2017 (Seal) |
| 9E72B6F6944C45... | |

☐ Other Borrower ☐ Owner of Property ☐ Witness

☐ Other Borrower ☐ Owner of Property ☒ Witness

© CUNA Mutual Group 1999, 2000, 01, 02, 05, 06, 08 All Rights Reserved

NXX029-e

DocuSign Envelope ID: 3E0EDF6E-AA40-4FC2-8EE3-749027B60D4E

Credit Union Rising Center Credit Union | Loan No. [blacked out] | Acct. No. [blacked out]

Borrower(s) Ren McKay Guthrie | EMILY GUTHRIE

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of | Amount Given to You Directly | Amount Paid on Your Account | Prepaid Finance Charge |
|---|---|---|---|
| $ 7,640.44 | $ 0.00 | $ | $ |

**Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)**

| | | | | |
|---|---|---|---|---|
| * $ 499.00 | To ICCU Gap | $ 7,141.44 | To Action Motor Sports |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |
| $ N/A | To | $ N/A | To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY -** You promise to pay $ 7,640.44 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 7.790 % per year.

**Collection Costs:**

You agree to pay all costs of collecting the amount you owe under this agreement including court costs and reasonable attorney fees.

**2. PAYMENTS -** You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fee in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL -** If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN -** This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property described or other loans you have with us also secures this loan, unless the property is a dwelling. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT -** You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT -** When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

**7. EACH PERSON RESPONSIBLE -** Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE -** If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES -** Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT -** You promise to use your account for consumer (personal, family or household) purposes, unless the Credit Union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. OTHER PROVISIONS -**

Credit Union Plains Commerce Bank Credit Union    Loan No. xxxxx8883    Acct. No. xxxxx8883

Borrower(s) Ren McKay Guthrie    EMILY GUTHRIE

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN -** You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS -** The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. **The security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal dwelling.** If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY -** You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST -** If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY -** Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES -** You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's

payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE -** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**8. DEFAULT -** You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it. You will also be in default under this Agreement if the Loan is in default.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT -** When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN -** We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS -** If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE -** THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY -** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**15. OTHER PROVISIONS -**

# EXHIBIT E

15277766

THE ATTACHED IDAHO CERTIFICATE OF TITLE IS THE LEGAL OWNERSHIP DOCUMENT FOR YOUR VEHICLE OR VESSEL. DO NOT CARRY IT IN YOUR VEHICLE OR VESSEL. KEEP IT IN A SECURE PLACE. UPON SALE OR TRANSFER OF THIS VEHICLE OR VESSEL, THE NEW OWNER MUST APPLY FOR TITLE WITHIN 30 DAYS TO AVOID A $20.00 PENALTY.

IDAHO CENTRAL CU
TITLES*
PO BOX 2469
POCATELLO ID  83206

18DH009061  DVS01182      438

## IDAHO CERTIFICATE OF TITLE

ITD 3517  (Rev. 03-17)
Supply # 018755298

| VEHICLE IDENTIFICATION NUMBER | | YEAR | MAKE | BODY | MODEL | DESCRIPTION |
|---|---|---|---|---|---|---|
| 2C3CDZDJ0GH149172 | | 2016 | DODG | 2D | CHL | |

| 2ND VEHICLE IDENTIFICATION NUMBER | ODOMETER READING | | DATE |
|---|---|---|---|
| | 25759 ACTUAL | | 07/31/2018 |

| TITLE NUMBER | PRINT DATE | WEIGHT | LENGTH | WIDTH | HULL | HORSEPOWER | PROPULSION |
|---|---|---|---|---|---|---|---|
| 186045545 | 09/17/2019 | | | | | | |

OWNER'S NAME AND ADDRESS

OTHER PERTINENT DATA

GUTHRIE, REN MCKAY   OR
GUTHRIE, EMILY RAQUEL
3773 AUTUNMWOOD DR
IDAHO FALLS, ID 83406

### Assignment of Title

Warning:  It is a felony to enter a false selling price, name, or address, or to alter or forge this document. Federal and State laws require you to state the mileage when transferring motor vehicle ownership.  Failure to complete or providing false information may result in fines and/or imprisonment.

**Odometer Reading** - Reading is actual unless indicated otherwise

1 (No tenths)        Reading Date
☐ In Excess of Mechanical Limits      ☐ Exempt
☐ Not Actual - **Warning: Odometer Discrepancy**   ☐ No Device

2 Date Sold        Selling Price (See warning above)

3 Seller's or Representative's Printed Name(s)

4 I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby transfer ownership to the named purchaser. I realize I must file a release of liability statement within five days of delivering the vehicle to the purchaser.

Seller's or Representative's Signature

A X
B X

5 1st Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business
A
2nd Purchaser's Printed Full Legal Name/Idaho Driver's License No. or SSN; EIN if Business
B

6 Mailing Address and Physical Address (if different)

7 City        State    Zip

8 If I apply for title in Idaho, I know I must do so within 30 days of purchase or a $20.00 late filing penalty will be due. I am aware of the odometer certification made by the seller.
1st Purchaser's Signature (or Representative's Signature)
A X
2nd Purchaser's Signature (or Representative's Printed Name)
B X

### Lienholder Section

First Lien
IDAHO CENTRAL CREDIT UNION

PO BOX 2469
POCATELLO, ID 83206-2469
RECORDED 11/30/2018

9 Signature Releasing Lien        Date
X

Second Lien

10 Signature Releasing Lien        Date
X

11 New Lienholder's Name / EIN (Use Idaho driver's license # or SSN if individual)

12 Mailing Address

13 City        State    Zip

15277766

15277770

THE ATTACHED IDAHO CERTIFICATE OF TITLE IS THE LEGAL OWNERSHIP
DOCUMENT FOR YOUR VEHICLE OR VESSEL. DO NOT CARRY IT IN YOUR
VEHICLE OR VESSEL. KEEP IT IN A SECURE PLACE. UPON SALE OR
TRANSFER OF THIS VEHICLE OR VESSEL, THE NEW OWNER MUST APPLY
FOR TITLE WITHIN 30 DAYS TO AVOID A $20.00 PENALTY.

```
IDAHO CENTRAL CU
TITLES*
PO BOX 2469
POCAETLLO ID  83206
```

18DK000945   DVS01182      442

## CERTIFICATE OF TITLE

ITD 3517  (Rev. 03-17)
Supply # 018755298

| VEHICLE IDENTIFICATION NUMBER | | YEAR | MAKE | BODY | MODEL | DESCRIPTION |
|---|---|---|---|---|---|---|
| 1FM5K8GT7EGB80618 | | 2014 | FORD | LL | XPL | |

| 2ND VEHICLE IDENTIFICATION NUMBER | | ODOMETER READING | | DATE | |
|---|---|---|---|---|---|
| | | 76907 ACTUAL | | 12/27/2017 | |

| TITLE NUMBER | PRINT DATE | WEIGHT | LENGTH WIDTH | HULL | HORSEPOWER | PROPULSION |
|---|---|---|---|---|---|---|
| 186002010 | 09/17/2019 | | | | | |

OWNER'S NAME AND ADDRESS

```
GUTHRIE, REN MCKAY
5380 N 55TH E
IDAHO FALLS, ID 83401
```

OTHER PERTINENT DATA

### Assignment of Title

**Warning:** It is a felony to enter a false selling price, name, or address, or to alter or forge this document. Federal and State laws require you to state the mileage when transferring motor vehicle ownership. Failure to complete or providing false information may result in fines and/or imprisonment.

**Odometer Reading** - Reading is actual unless indicated otherwise

1  (No tenths) _____   Reading Date _____
☐ In Excess of Mechanical Limits   ☐ Exempt
☐ Not Actual - **Warning: Odometer Discrepancy**   ☐ No Device

2  Date Sold | Selling Price (See warning above)

3  Seller's or Representative's Printed Name(s)

4  I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby transfer ownership to the named purchaser. I realize I must file a release of liability statement within five days of delivering the vehicle to the purchaser.

Seller's or Representative's Signature
A  X
B  X

5  1st Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business
A

B  2nd Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business

6  Mailing Address and Physical Address (if different)

7  City | State | Zip

8  If I apply for title in Idaho, I know I must do so within 30 days of purchase or a $20.00 late filing penalty will be due. I am aware of the odometer certification made by the seller.
1st Purchaser's Signature (or Representative's Signature)
A  X

2nd Purchaser's Signature (or Representative's Printed Name)
B  X

### Lienholder Section

First Lien
```
IDAHO CENTRAL CREDIT UNION

PO BOX 2469
POCATELLO, ID 83206-2469
RECORDED 01/05/2018
```

Second Lien

9  Signature Releasing Lien | Date
X

10  Signature Releasing Lien | Date
X

11  New Lienholder's Name / EIN (Use Idaho driver's license # or SSN if individual)

12  Mailing Address

13  City | State | Zip

15277770

# CERTIFICATE OF TITLE

ITD 3517  (Rev. 03-17)
Supply # 018755298

| VEHICLE IDENTIFICATION NUMBER | | YEAR | MAKE | BODY | MODEL | DESCRIPTION |
|---|---|---|---|---|---|---|
| 1FTFW1EF8FKD38609 | | 2015 | FORD | PK | F15 | |

| 2ND VEHICLE IDENTIFICATION NUMBER | ODOMETER READING | DATE |
|---|---|---|
| | 102115 ACTUAL | 11/20/2018 |

| TITLE NUMBER | PRINT DATE | WEIGHT | LENGTH | WIDTH | HULL | HORSEPOWER | PROPULSION |
|---|---|---|---|---|---|---|---|
| 186046806 | 10/10/2019 | | | | | | |

**OWNER'S NAME AND ADDRESS**

OTHER PERTINENT DATA

```
GUTHRIE, REN MCKAY   OR
GUTHRIE, EMILY RAQUEL
3773 AUTUMNWOOD DR
IDAHO FALLS, ID 83406
```

## Assignment of Title

Warning: It is a felony to enter a false selling price, name, or address, or to alter or forge this document. Federal and State laws require you to state the mileage when transferring motor vehicle ownership. Failure to complete or providing false information may result in fines and/or imprisonment.

**Odometer Reading** - Reading is actual unless indicated otherwise

1. (No tenths)          Reading Date
   ☐ In Excess of Mechanical Limits      ☐ Exempt
   ☐ Not Actual - **Warning: Odometer Discrepancy**      ☐ No Device

2. Date Sold          Selling Price (See warning above)

3. Seller's or Representative's Printed Name(s)

4. I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby transfer ownership to the named purchaser. I realize I must file a release of liability statement within five days of delivering the vehicle to the purchaser.

Seller's or Representative's Signature

A **X**

B **X**

5. 1st Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business
A

6. 2nd Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business
B

7. Mailing Address and Physical Address (if different)

   City          State     Zip

8. If I apply for title in Idaho, I know I must do so within 30 days of purchase or a $20.00 late filing penalty will be due. I am aware of the odometer certification made by the seller.
   1st Purchaser's Signature (or Representative's Signature)
A **X**

2nd Purchaser's Signature (or Representative's Printed Name)
B **X**

## Lienholder Section

**First Lien**
```
IDAHO CENTRAL CREDIT UNION

PO BOX 2469
POCATELLO, ID  83206-2469
RECORDED 12/07/2018
```

**Second Lien**

10. Signature Releasing Lien          Date
    **X**

11. New Lienholder's Name / EIN (Use Idaho driver's license # or SSN if individual)

12. Mailing Address

13. City          State     Zip

9. Signature Releasing Lien          Date
   **X**

15321857

# CERTIFICATE OF TITLE

ITD 3517 (Rev. 03-17)
Supply # 018755298

| VEHICLE IDENTIFICATION NUMBER | | YEAR | MAKE | BODY | MODEL | DESCRIPTION |
|---|---|---|---|---|---|---|
| VBKXWM234GM378495 | | 2016 | KTM | MB | CYL | 300XC |

| 2ND VEHICLE IDENTIFICATION NUMBER | ODOMETER READING | DATE |
|---|---|---|
| | NO DEVICE | |

| TITLE NUMBER | PRINT DATE | WEIGHT | LENGTH | WIDTH | HULL | HORSEPOWER | PROPULSION |
|---|---|---|---|---|---|---|---|
| A163079552 | 10/10/2019 | | | | | | |

OWNER'S NAME AND ADDRESS — OTHER PERTINENT DATA

GUTHRIE, REN MCKAY
5380 N 55TH E
IDAHO FALLS, ID 83401

## Assignment of Title

Warning: It is a felony to enter a false selling price, name, or address, or to alter or forge this document. Federal and State laws require you to state the mileage when transferring motor vehicle ownership. Failure to complete or providing false information may result in fines and/or imprisonment.

**Odometer Reading** - Reading is actual unless indicated otherwise

(No tenths) _____ Reading Date _____

☐ In Excess of Mechanical Limits    ☐ Exempt
☐ Not Actual - **Warning: Odometer Discrepancy**    ☐ No Device

Date Sold                Selling Price (See warning above)

Seller's or Representative's Printed Name(s)

I certify, to the best of my knowledge, that the odometer reading reflects the actual mileage, unless otherwise indicated. I also hereby transfer ownership to the named purchaser, I realize I must file a release of liability statement within five days of delivering the vehicle to the purchaser.

Seller's or Representative's Signature

A X
B X

1st Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business

2nd Purchaser's Printed Full Legal Name / Idaho Driver's License No. or SSN; EIN if Business

Mailing Address and Physical Address (if different)

City                State    Zip

If I apply for title in Idaho, I know I must do so within 30 days of purchase or a $20.00 late filing penalty will be due. I am aware of the odometer certification made by the seller.

1st Purchaser's Signature (or Representative's Signature)

A X

2nd Purchaser's Signature (or Representative's Printed Name)

B X

## Lienholder Section

First Lien
IDAHO CENTRAL CREDIT UNION

PO BOX 2469
POCATELLO, ID  83206-2469
RECORDED 09/15/2017

Signature Releasing Lien                Date
X

Second Lien

Signature Releasing Lien                Date
X

New Lienholder's Name / EIN (Use Idaho driver's license # or SSN if individual)

Mailing Address

City                State    Zip

15321745

VOID IF ALTERED EAGLE WATERMARK VISIBLE IF HELD TO LIGHT